MARIE E. McKENNA, Appellant, *v.*
BARBARA INGERSOLL, Respondent.

No. 4246

April 12, 1960                    350 P.2d 725

*George E. Franklin, Jr.,* of Las Vegas, for Appellant.

*Morse, Graves & Compton,* of Las Vegas, for Respondent.

## OPINION

By the Court, PIKE, J.:

This appeal is from a judgment based upon a jury verdict denying damages to plaintiff in a personal injury case, and the order denying motion for new trial. Appellant claimed damages for personal injuries assertedly sustained by her as a result of respondent's negligence in driving another car into the rear of the car operated by appellant.

The accident occurred at a street intersection in Las Vegas, Nevada about four o'clock in the afternoon of November 18, 1957. The traffic control lights at the intersection of Charleston Boulevard and Main Street were then being manually operated by a Las Vegas police officer. Respondent was driving her car in an easterly direction in the middle traffic lane on Charleston Boulevard immediately behind the car driven by appellant. The car just in front of appellant's car, in the same line of traffic, was stopped at the intersection by the traffic light and appellant and respondent also stopped their cars without incident. However, when the traffic signal changed so as to permit the line of cars to proceed through the intersection, respondent drove the front end of her car against the rear end of appellant's car. This, according to appellant's testimony, caused the front end of appellant's car to strike the rear end of the car immediately ahead of it. Appellant's two small children were seated with her in the front seat of her car.

Appellant claimed injuries to her cervical spine of the type referred to as a whiplash of the neck, caused by the rear end collision. She testified she had never had any trouble with her neck prior to the accident. On the same day, following the accident, X-ray pictures of her spine were taken, followed by treatments including traction and the wearing of a series of collars to support her neck.

Early in May 1958 a myelogram was taken which disclosed an obstruction of the spinal canal and thereafter surgery was performed on appellant's neck in order to relieve pressure on a nerve root. The neurological surgeon who performed the operation attributed such pressure on the nerve to a herniated disc between the vertebrae in appellant's cervical spine.

Appellant asserts as error, (1), insufficiency of the evidence to justify the verdict and that the verdict was against law; and, (2), manifest disregard by the jury of certain instructions. In support of such first assignment of error appellant argues that, as the uncontradicted evidence is that the rear end collision was caused solely by respondent's negligence, as a matter of law, respondent was liable for any injury to appellant resulting therefrom, and also that the undisputed evidence shows that appellant sustained certain injuries as a result of the collision.

The record sustains appellant's contention that her conduct had not contributed to the collision and that any negligence involved in such rear end collision was attributable entirely to respondent.

The police officer, who was controlling traffic by use of the traffic lights, testified that he observed the cars driven by the respective parties to this appeal as they approached the intersection heading east and that it was respondent's car which made the "contact" with the rear of appellant's car. Mrs. Ingersoll, respondent, testified with reference to the circumstances under which her car struck the car driven by Mrs. McKenna, appellant, and we find no evidence in the record inconsistent with her statements. On this point her testimony reads, "I pulled up behind Mrs. McKenna I'd say three or four feet and I stopped because the light was on rea; tne light changed and I started the car and evidently i started before she did because I bumped her. I don't know, possibly I might have shifted into high, but I bumped her, nevertheless." Respondent continued with her testimony to the effect that respondent's car had picked up "no momentum at

all" in traveling the three or four feet separating her car from appellant's just prior to the impact. Respondent also stated that her car "* * * must have been going 4 or 5 miles per hour, just like when you start up, * * *" at the time of the bump. Appellant contended that an impact of some considerable force occurred.

On this appeal, after stressing the manner in which the collision between the cars occurred, appellant proceeds to a detailed statement concerning the injuries, refers to the condition of appellant's cervical spine subsequent to the collision, and the medical and surgical care accorded her in an effort to bring her relief from such objectionable neck conditions. Much of this evidence is uncontradicted, as contended by appellant.

In support of appellant's second assignment of error on this appeal, appellant states manifest disregard by the jury of certain instructions, placing liability upon respondent should the jury find that respondent's negligence caused an aggravation of a preexisting disability suffered by the appellant. As the disabilities asserted by appellant were those already referred to, pertaining to the cervical spine, these instructions had the effect of advising the jury that, in order for the appellant to recover, she need not necessarily establish that respondent's negligence caused the injury to appellant's neck, but that it would suffice for her to show that respondent's negligence had aggravated a cervical spine disability existing prior to the collision.

Both of these assignments of error must be reviewed in the light of respondent's defense. That defense, while admitting the collision took place, as stated, contended that the impact between the cars was so minor in force and degree as to have caused no whiplash injury to appellant's neck, and no aggravation of a preexisting neck condition. In support of this defense, as to the degree of the impact, the record shows that the jury had before it, besides the testimony of respondent, certain other evidence which it was entitled to consider and weigh. Officer Al Hartley, who observed the occurrence from his traffic control location, referred to the collision between the cars as "* * * just a tap from the striking

vehicle", and stated that even a minor damage report on the accident was unwarranted. He corroborated respondent's testimony that, immediately upon her car being struck from the rear, both vehicles having stopped, appellant jumped out of her car and carried on a discussion with respondent in loud tones. He also testified that he failed to observe any injuries sustained by appellant or either of her two children, although appellant had contended that both of the children had been thrown forward from their seats and had received minor injuries to their faces. Such throwing forward of the two children, as well as appellant, considering that appellant's car had been struck from the rear, would be understandable upon accepting appellant's testimony that her car was forced into the car immediately ahead of it with enough momentum to bring this about.

The traffic officer testified that he did not observe appellant being thrown forward against the steering wheel as she testified. Appellant testified that the person driving the car just ahead of her, into which her car was forced, got out before resuming progress through the intersection, but the traffic officer and respondent both testified that such third car drove on immediately and that the driver did not get out. Respondent testified that her first concern, when approached by appellant, was to inquire if anyone had been injured in appellant's car, and she did so, to which inquiry appellant replied that no one had been injured. At appellant's insistence, respondent accompanied her to an automobile agency to see about any repairs required to be made to appellant's car by reason of the collision, and after such examination the agency found the repairs to be minor in nature. The jury had photographs of the cars available for their consideration, as well as repair estimates and bills. Appellant sought no damages for repairs to her car.

George L. Abrums, M.D., in testifying, referred to the report which he had made on the X-rays taken of appellant's cervical spine on the evening of the day upon which the collision occurred. His testimony referred to a narrowing space between the 5th and 6th, and also

between the 6th and 7th cervical vertebrae of the neck and to characteristics of the bone on the back of the vertebrae which showed that the condition had existed for nine months or a year prior to the date of the X-rays, and stated that there had been chronic pain on the posterior longitudinal ligaments. He testified that the heavy bone growth sclerosis of a particular margin showed that the narrowing had been there and that the bone edges, instead of being properly separated, had been rubbing together with friction and strain for about the time indicated. The doctor testified that there was no doubt in his mind that the neck condition existed prior to the accident. Also, when asked to refer to the hospital records and determine whether or not subsequently a laminectomy had been performed, he testified that, from what the X-rays upon which he had reported had disclosed, he would not have been surprised if there had been such an operation performed and "it has been overdue." The doctor who subsequently performed the laminectomy on appellant's neck also stated that he had observed on such X-rays a narrowing between the fifth and sixth vertebrae; that the myelogram subsequently taken showed an obstruction at the sixth cervical vertebrae level in the spinal canal and that, in the operation, the bony covering of the spinal canal, which was removed, involved this vertebra and the vertebrae on each side of it. While the same neurological surgeon who operated testified that the compression of the surgical root was caused by an intravertebral disc being out of place, forming the obstruction in the spinal canal, the jury was entitled to consider his testimony along with the other medical testimony and evidence in the case for the purpose of determining whether appellant's neck condition existed prior to the accident or was caused by the accident. Similarly, the jury must be viewed as having considered all of such medical testimony and evidence along with the evidence relating to the force of the impact, in concluding whether or not the collision had aggravated any already existing condition in appellant's cervical spine, in the event it found the neck condition to have been a preexisting one. Likewise, we must

assume that the jury understood the instructions and correctly applied them to the evidence. Nunneley v. Edgar Hotel, 36 Cal.2d 493, 225 P.2d 497, 502. Here, in view of the evidence referred to, and in the absence of any sufficient showing to the contrary, we must assume that the jury followed the instructions relating to any aggravation caused by the collision to a preexisting condition of appellant's neck. Ames v. Western Pacific, 48 Nev. 78, 88, 227 P. 1009, 1012. We find appellant's contention of manifest disregard by the jury of such instructions unsupported by the record.

Although the evidence is uncontroverted that the collision was caused by respondent's negligence, and there is no substantial conflict concerning appellant's neck condition following the accident, there was a substantial conflict of evidence as to whether or not the accident was the cause of appellant's neck condition or of the aggravation of any preexisting neck condition.

The evidence as hereinabove reviewed sufficiently points out the material conflict of evidence on such determinative issues which the jury was required to decide. Accordingly, the verdict of the jury will not be disturbed upon appeal. Tonopah Lumber Co. v. Riley, 30 Nev. 312, 95 P. 1001. There is substantial evidence supporting the jury verdict in favor of respondent, and the judgment based upon it must stand. Cram v. Durston, 68 Nev. 503, 505, 237 P.2d 209, 210. Judgment and order denying appellant's motion for new trial are affirmed, with costs to respondent.

MCNAMEE, C. J., and BADT, J., concur.