OPINION
 

 Per Curiam:
 

 Appellant Edolia Paul slipped and fell in the buffet line of respondent Imperial Palace, Inc. (Imperial). Paul sued Imperial.
 
 *1546
 
 After a jury returned a verdict in favor of Paul, the district court granted Imperial’s motion for a new trial.
 

 Paul appeals. We conclude that the district court erred in granting a new trial and therefore reverse and remand for reinstatement of the jury’s verdict.
 

 FACTS
 

 In June 1989, appellant Edolia Paul and her friend, Mamie McCloud, were in Las Vegas with a church group from Lafayette, Louisiana. On the morning of June 22, the two were in the buffet serving line at Imperial. As Paul reached for a cereal bowl, she slipped and fell on her right shoulder. McCloud heard Paul’s foot slip and saw the end of the fall. McCloud looked at the rug where Paul fell, and it was slick from some kind of oil.
 

 Several hotel employees working in that area came running to the scene of the accident. Some of the employees remarla'' that several other people had slipped on the rug recently, tho%.r not that day. Evidence showed that the carpet runners along the food serving area were changed each day before the buffet opened for breakfast and that hostesses monitored the buffet area to make sure that any spilled food was cleaned up.
 

 A doctor in Louisiana later performed surgery on Paul’s arm. The doctor diagnosed Paul’s injury as a torn rotator cuff and adhesive capsulitis, or frozen shoulder. After the operation, Paul had approximately a thirty percent permanent disability in her upper right arm. She decided not to have a second operation because the doctor gave only a twenty percent chance that it would restore full use of her arm. At trial, Paul demonstrated the limits in her arm motion. Since the accident, she could not sleep on her right side because of the pain and could no longer scrub at home or use a mop or broom.
 

 Instruction 17a given to the jury allowed recovery for past and future medical expenses and for past and future physical and mental pain, suffering, anguish, and disability. Imperial objected to the instruction. It argued that Paul had not proved the amount or necessity for any future medical expenses or that pain and suffering would continue in the future. Paul’s counsel argued that they had shown that she was in pain which would last for the rest of her life. The district court asked, “you are not going to argue any specific figures?” Paul’s counsel said that he would not, except that Paul would “have to buy a bottle of aspirin and Tylenol from time to time.” The court stated: “If you limit your final argument to that concept, I’ll let you argue that.” Counsel also agreed that he would not argue that future surgery was contemplated. The court stated: “All right, with that understand
 
 *1547
 
 ing, then.” Imperial did not object to the court’s ruling, and the parties agreed to the verdict forms.
 

 In closing argument, Paul’s counsel suggested that
 

 it’s reasonable to believe that she’s going to have some very minor, minimum expense in the future years with aspirin and Tylenol.
 

 And other than that, we face the question, what can she be awarded for pain and suffering and disability.
 

 He told the jury that “all the trouble and the inconvenience” was not a factor in determining damages, but that “pain and suffering and disability and past medical expenses” were. He said, “I don’t think $200,000 is too much for the injuries that she has suffered, and her pain and suffering, and her disability.”
 

 The jury returned the verdict form for Paul. It read in part:
 

 We assess the Plaintiff’s special past medical expense damages in the sum of $4,844.77.
 

 We assess her other combined general damages in the sum of
 
 $85,000.00.
 

 The two figures were filled in by the jury. The jury further found that Paul’s negligence was forty percent of the cause of her injury and Imperial’s was sixty percent. Thus, Imperial was liable for $2,906.86 in past medical expenses and $51,000.00 in general damages.
 

 After the trial, Imperial moved for judgment notwithstanding the verdict or a new trial. It argued that the statements of the hotel employees were erroneously admitted, that McCloud’s lay opinion on the cause of the fall was improper, that the jury instruction on damages was improper, and that the jury disregarded its instructions. The district court granted the motion for a new trial without specifying its reasons. The civil court minutes indicate that the order was “based upon the improper jury instruction 17a.”
 

 DISCUSSION
 

 A new trial may be granted on various “grounds materially affecting the substantial rights of an aggrieved party.” NRCP 59(a). We conclude that none of the four issues raised by Imperial constituted grounds for granting a new trial.
 

 Whether the jury instruction on damages was improper
 

 Jury instruction 17a allowed the jury to compensate Paul for reasonable past and future medical expenses and for past and future physical and mental pain, suffering, anguish, and disability. Imperial argues that there was insufficient showing of future
 
 *1548
 
 damages of any kind to allow the jury to award such damages, so the district court properly granted a new trial. We disagree.
 

 Imperial asserts that the only evidence of future pain, suffering, and disability came from Paul’s testimony. It argues that this is insufficient under the law, citing Gutierrez v. Sutton Vending Serv., 80 Nev. 562, 397 P.2d 3 (1964), and Lerner Shops v. Marin, 83 Nev. 75, 423 P.2d 398 (1967).
 
 Gutierrez
 
 was a personal injury case with an appellant who complained of headaches up to the time of trial. Appellant’s' testimony was “not competent to allow damages for future pain and suffering. Where, as here, the disability is subjective in character (headaches, etc.) and not demonstrable to others, expert testimony that the disability will probably continue is needed before an award for future damage is permissible.”
 
 Gutierrez,
 
 80 Nev. at 565-66, 397 P.2d at 4 (citation omitted). Had the appellant’s “disability been readily observable by the jurors, objective in nature rather than subjective, an award for future pain and suffering might have been permitted without supporting medical opinion evidence.”
 
 Id.
 
 at 566, 397 P.2d at 5.
 
 Lerner
 
 was a false imprisonment case where the appellant sought damages for future pain and suffering. The court again stated that in cases involving “subjective physical injury, ... the claim must be substantially supported by expert testimony to the effect that future pain and suffering is a probable consequence rather than a mere possibility.”
 
 Lerner,
 
 83 Nev. at 79-80, 423 P.2d at 40.
 

 Contrary to Imperial’s assertion, Paul’s testimony was not the only evidence of her future pain, suffering, and disability. The doctor testified in his deposition regarding her disability and, to some extent, her pain and suffering, and Paul demonstrated her disability to the jury. Because of this supporting evidence and because Paul’s disability was not “subjective,”
 
 Gutierrez
 
 and
 
 Lerner
 
 are distinguishable from this case. Paul provided sufficient evidence of future pain, suffering, and disability to allow the jury to award such damages.
 

 Imperial also claims that Paul agreed not to argue the issue of future damages, but then did so. This is not correct. Imperial actually acknowledged in its opening statement that Paul suffered continuing disability, and it objected only to instructing the jury on future medical expenses and future pain and suffering. Paul never agreed not to argue for future damages for disability.
 

 The district court’s ruling in regard to future pain and suffering was not so clear. The court directed Paul not to argue specific figures in regard to future medical expenses and perhaps future pain and suffering. Both concepts came up, and the court did not
 
 *1549
 
 distinguish them. Regardless of the court’s intentions, it is clear that Paul’s counsel only agreed not to argue a specific figure for any future medical expenses: he specifically agreed to raise only the need to buy aspirin and Tylenol and not to argue that more surgery was contemplated. These are matters of medical expenses, not pain and suffering. In his closing argument, he conformed to that agreement, confining his discussion of future medical expenses to aspirin and Tylenol. He then argued for future damages for pain, suffering, and disability and suggested a figure of $200,000.00. This argument was proper given both the district court’s ruling and the facts presented. Moreover, Imperial did not object to this argument, which suggests that it did not feel that Paul’s counsel had violated the court’s ruling.
 

 We conclude that jury instruction 17a regarding future damages was proper, that Paul argued properly under the instruction, and that the district court erred in ordering a new trial on this basis.
 

 Whether the district court erroneously admitted out-of-court statements by Imperial’s employees regarding prior falls
 

 The district court did not base its order on this or the following two issues. However, a respondent may advance any argument to support a judgment even if the district court rejected or did not consider the argument. Ford v. Showboat Operating Co., 110 Nev. 752, 755, 877 P.2d 546, 548 (1994).
 

 Paul’s friend, McCloud, testified to statements made by employees of Imperial regarding earlier falls by other people in the area where Paul fell. Imperial unsuccessfully objected to this testimony. It maintains that this evidence was improper because it was irrelevant and hearsay.
 

 First, we conclude that the employees’ statements were relevant to the issue of whether Imperial had constructive notice of a hazardous condition, a question of fact which the jury generally decides.
 
 See
 
 Sprague v. Lucky Stores, Inc., 109 Nev. 247, 250-51, 849 P.2d 320, 322-23 (1993). Second, the employees’ statements were not hearsay. A statement is not hearsay if it is offered against a party and is made by the party’s agent or servant concerning a matter within the scope of agency or employment, before termination of the relationship. NRS 51.035(3)(d). The record indicated that the employees who made the statements were working in the area of the dining room and buffet line. Therefore, the statements concerned matters within the scope of
 
 *1550
 
 the workers’ employment and were admissible as statements against Imperial’s interest.
 

 Whether the district court erroneously admitted lay opinion
 

 The district court allowed Paul’s friend, McCloud, to give her opinion regarding the cause of Paul’s fall. Imperial argues that the court abused its discretion in allowing this lay opinion.
 

 NRS 50.265 limits the opinion testimony of non-experts to opinions or inferences which are:
 

 1. Rationally based on the perception of the witness; and
 

 2. Helpful to a clear understanding of his testimony or the determination of a fact in issue.
 

 McCloud heard Paul’s foot slip, saw the end of Paul’s fall, and then saw oil on the rug where Paul fell. We conclude that her opinion was rationally based on her perceptions and that the district court did not abuse its discretion in determining that the opinion was helpful to the jury.
 

 Whether the jury disregarded its instructions
 

 Imperial argues that the jury disregarded its instructions regarding Imperial’s liability for the presence of a foreign substance on the floor, actual and constructive notice, and the establishment of negligence by substantial evidence. Per NRCP 59(a)(5), if the jury could not have reached the verdict that it reached if it had properly applied the district court’s instructions, the court is obligated to grant a new trial. Taylor v. Silva, 96 Nev. 738, 740, 615 P.2d 970, 971 (1980). We conclude that the jury’s verdict was consistent with proper application of these instructions and that a new trial was not mandated.
 

 CONCLUSION
 

 The district court erroneously granted a new trial. Sufficient evidence supported instructing the jury regarding future damages, and Paul’s closing argument in regard to future damages was proper. The court did not err in allowing a lay witness to give her opinion as to the cause of Paul’s fall. It also did not err in allowing testimony regarding the employees’ statements because they were admissible statements against interest relevant to the issue of constructive notice. Finally, the jury’s verdict was consistent with proper application of its instructions.
 

 Accordingly, we reverse the district court’s order granting the motion for a new trial and remand this case to the district court for reinstatement of the jury’s verdict.